## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CRUZ MARIA PEREZ, as Next of Friend of D.J., a minor child,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No.** |
| **FORT BEND INDEPENDENT SCHOOL DISTRICT and LUIS REYES AGUILAR,** | § § § § | |
| **Defendants.** | § § § | |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TITLE IX VIOLATIONS, BATTERY, NEGLIGENCE, AND OTHER TORTIOUS CONDUCT

COMES NOW, Plaintiff Cruz Maria Perez, as Next of Friend of D.J., by and through her counsel, Fadduol, Cluff, Hardy & Conaway, P.C. (Meghan L. Mitchell), and brings the following causes of action pursuant to 42 U.S.C. § 1983, 20 U.S.C. § 1681, the Fourteenth Amendment of the United States Constitution, and common law:

### PARTIES

*Plaintiff*

1.    Plaintiff Cruz Maria Perez ("**Plaintiff**") is the mother of D.J., a minor child, and is bringing this lawsuit on behalf of D.J. Plaintiff is a resident of Fort Bend County, Texas.

2.    In the 2022-2023 school year, D.J. was a five-year-old kindergarten student who attend Lula Belle Goodman Elementary School ("**Lula Belle**"), located at 1100 W Sycamore Rd, Fresno, Texas, in Fort Bend County.

*Defendants*

3.        Defendant Fort Bend Independent School District ("**FBISD**") is a political subdivision of the State of Texas, and a "person" under 42 U.S.C § 1983. FBISD is responsible for the administration of public schools within their geographic boundaries. Upon information and belief, and at all times material hereto, FBISD received federal funding and financial assistance. At all times material hereto, FBISD employed Defendant Luis Reyes Aguilar ("**Defendant Aguilar**"). At all times material hereto, FBISD was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, including Defendant Aguilar. Defendant FBISD may be served through its Superintendent Dr. Marcell Smith, 16431 Lexington Blvd. Sugar Land, TX 77479.

4.        Defendant Aguilar was, at all times material hereto, employed by FBISD as a teacher at Lula Belle. Upon information and belief, Defendant Aguilar resides in Fort Bend County, Texas. Defendant Aguilar acted in the course and scope of his duties as an FBISD employee. He is sued in his individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983. Defendant Aguilar may be served at his last known address, 2401 Lakeshore Blvd. Apt. 12203 Austin, TX 78741.

## JURISDICTION AND VENUE

5.        Original jurisdiction is conferred upon this Court pursuant to 28 U.S.C.§§ 1331 and 1343 because the facts and circumstancing underlying the claims arise under the Constitution and laws of the United States.

6.        Venue is proper in the Southern District of Texas pursuant to 28 U.S.C § 1391(1) and (2) because FBISD and Defendant Aguilar reside in the district and because the events and omissions giving rise to Plaintiff's claims occurred in the district.

## FACTUAL ALLEGATIONS

*Defendant Aguilar's Sexual Abuse of D.J. at Lula Bella*

7.    Defendant Aguilar has been a teacher since at least 2006.

8.    Upon information and belief, since becoming a teacher, Defendant Aguilar has primarily taught early childhood education.

9.    During the 2022-2023 school year, Defendant Aguilar was a kindergarten teacher at Lula Belle.

10.    That same year, D.J. attended kindergarten at Lula Bella and was assigned to Defendant Aguilar's kindergarten class.

11.    The school year started for Lula Belle on August 10, 2022.

12.    Almost immediately after the 2022-2023 school year began, Defendant Aguilar took full advantage of his position as D.J.'s teacher and began sexually abusing D.J. in his classroom and bathroom at Lula Belle.

13.    Defendant Aguilar began sexually abusing D.J. at school, during class, by touching her butt and genitalia. In doing so, Defendant Aguilar utilized classic grooming techniques by telling D.J. that his inappropriate and sexually abusive touching on her butt and genitalia was just a "game."

14.    Not only would Defendant Aguilar sexually abuse D.J. directly, but Defendant Aguilar would also direct his kindergarten students to play a "game" and have the students inappropriately touch one another as part of the "game."

15.    This "game" was not just a game, it was sexual abuse of his students. And whether Defendant Aguilar's whole classroom "game" was meant to distract his victim(s), such as D.J., into thinking the "game" was appropriate, or if he did so for his own sickening self-gratification, this whole classroom "game" further harmed D.J.

16.     Defendant Aguilar would also inappropriately touch and rub D.J.'s head, shoulders, and forehead.

17.     Upon information and belief, Defendant Aguilar also sexually abused D.J. in the bathroom at Lula Belle.

18.     In September 2022, D.J. disclosed the abuse by Defendant Aguilar by telling Plaintiff about the "game" Defendant Aguilar played with her.

19.     D.J. also showed other signs of being sexually abused by Defendant Aguilar when Plaintiff noticed that D.J.'s genitalia was red and irritated.

20.     Upon learning that D.J. had been sexually abused, Plaintiff immediately notified FBISD. But FBISD did nothing to actually investigate the claim or make any attempt to provide D.J. and other Lula Bella students a safe environment free from Defendant Aguilar.

21.     Even after D.J. disclosed the "game" and inappropriate and sexually abusive touching by Defendant Aguilar, FBISD never placed Defendant Aguilar on leave.

22.     Nor was any real serious investigation done by FBISD.

23.     FBISD apparently never contacted Child Protective Services ("**CPS**") and made no attempt to have D.J. undergo a safe house interview or SANE Exam and no CPS member contacted Plaintiff.

24.     After nothing was done to protect D.J. and other students at Lula Bella from Defendant Aguilar, Plaintiff removed D.J. from his classroom.

### *The Effect of Defendant Aguilar's Sexual Abuse of D.J.*

25.     Once D.J. was removed from Defendant Aguilar's classroom, D.J. began exhibiting signs of sexual abuse and the trauma associated with it.

26.     Specifically, D.J. began to have night terrors and would wet the bed and pee herself. D.J. would then tell Plaintiff that she would dream of Defendant Aguilar.

27.     D.J. would later refuse to allow Plaintiff to bathe her and would tell Plaintiff not to touch her.

28.     Going to school became increasingly hard for D.J., and she reported that she would rather be sick than go to school. In fact, D.J. would often not take certain medication in an effort to stay sick and not go to school. According to D.J., she would rather be sick than go to school, presumably for fear of being sexually abused further by Defendant Aguilar or for fear of suffering further trauma by just being near Aguilar.

29.     When she went to school, D.J. would be afraid to see Defendant Aguilar. That is because even after D.J. was removed from his classroom, he would still attempt to be close to D.J. at lunchtime.

30.     At one point, Defendant Aguilar even attempted to hug D.J.

31.     D.J. then became afraid of lunchtime and would ask Plaintiff to accompany her at lunch. When Plaintiff did, Defendant Aguilar suddenly stopped showing up during D.J.'s lunchtime.

32.     Later, D.J. stopped eating and lost weight and she struggled with behavioral health issues.

33.     It was clear from the pain and trauma exhibited by D.J., that she could not overcome the challenges of school as a result of the sexual abuse she suffered by Defendant Aguilar. Ultimately, Plaintiff had to remove D.J. from school and start homeschooling her.

34.     Also as a result of the sexual abuse, D.J. started to undergo mental health counseling. Upon evaluating D.J., a mental health professional diagnosed D.J. with Post Traumatic Stress Disorder related to the sexual abuse by Defendant Aguilar.

35.     As noted in the clinical notes, D.J. began to progress after receiving therapy, only to regress once she saw Defendant Aguilar driving.

36.    During one counseling session, a mental health professional gave D.J. a doll and asked her to point to parts on the doll where Defendant Aguilar touched her. Consistent with her disclosure, D.J. pointed at the genitalia, shoulder, and head.

37.    Prior to the sexual abuse by Defendant Aguilar, D.J. was described as a happy, sweet, talkative, calm, and in good physical and mental health, who was actively and cheerfully engaged in activities. After the sexual abuse, mental health professionals have described D.J. as sad, scared, mad, aggressive, not talkative, with significant physical and physiological distress, including sleep disturbance, asthma exacerbation, anxiety, nightmares, and social withdrawal, all related to the sexual abuse by Defendant Aguilar.

*Defendant Aguilar's History of Sexual Abuse*

38.    Unfortunately, D.J. has not been the only victim of sexual abuse by Defendant Aguilar.

39.    Defendant Aguilar has been accused of sexually abusing other young students at Lula Belle, even after D.J. disclosed her abuse by Defendant.

40.    It is likely that D.J. was not Defendant Aguilar's first or last victim at Lula Belle or elsewhere for that matter.

41.    Despite having numerous allegations lodged against him for sexual abuse of students, FBISD and local law enforcement have done nothing to protect current and future victims of Defendant Aguilar.[1]

42.    Even after the numerous allegations of sexual abuse, Defendant FBISD continues to employ Defendant Aguilar as a teacher in its school district at Arizona Fleming

---

[1] Sarah Grunau and Daisy Espinoza, Allegations of Fort Bend elementary school teacher misconduct unsubstantiated, investigation dismissed, district says, Houston Public Media (Sept. 21, 2023), https://www.houstonpublicmedia.org/articles/education/2023/09/21/463128/fort-bend-elementary-teacher-under-investigation-after-accusations-of-inappropriate-misconduct/.

Elementary as a 3rd grade dual language teacher where he continues to have access to young victims.

43. Furthermore, upon information and belief, Defendant Aguilar had been previously convicted of sexual assault of a child and one count of indecency with a child.

### FBISD's Policies, Practices, Customs, and Usages allowed Defendant Aguilar to Sexual Abuse D.J.

44. Due to Defendant FBISD's policy, practice, custom, and/or usage, Defendant Aguilar had the ability and the opportunities to sexually assault his students, including D.J.

45. It was also FBISD's policy, practice, custom, and/or usage to not appropriately screen or perform background checks on applicants before licensing or hiring them to be FBISD teachers.

46. Defendant FBISD failed to completely or to adequately screen and/or perform a background check on Defendant Aguilar before licensing him and before hiring him as a teacher, including before hiring him to teach at Lula Belle. If FBISD had, or adequately had, screened and/or reviewed Defendant Aguilar's background, it would have been revealed that Defendant Aguilar had been previously suspected and/or accused of sexually inappropriate behavior towards his students.

47. If FBISD had, or adequately had, screened and/or reviewed Defendant Aguilar's background, it would have been plainly obvious to a reasonable person that hiring him and/or licensing him to teach young children would cause students, including D.J., to be deprived of their substantive due process right of bodily integrity under the Fourteenth Amendment.

48. It was also FBISD's policy, practice, custom, and/or usage to not train, or to not adequately train, its employees on receiving, acting upon, or investigating reports of

sexually inappropriate behavior or reports of suspicion of sexually inappropriate behavior by teachers.

49.     It was also FBISD's policy, practice, custom, and/or usage to not train, or to not adequately train, its employees on identifying signs of potential sexually inappropriate behavior by teachers towards students.

50.     It was also FBISD's policy, practice, custom, and/or usage to not train, or to not adequately train, its employees on identifying signs that a student has been, or has potentially been, sexually abused by an adult.

51.     It was also FBISD's policy, practice, custom, and/or usage to not supervise its teachers.

52.     It was also FBISD's policy, practice, custom, and/or usage to not appropriately discipline and investigate teachers and/or staff members who engaged in, were accused of engaging in, or suspected of engaging in sexually inappropriate behavior with students.

53.     Sexual abuse of students by teachers is, unfortunately, a recurring and proven problem in this country, in Texas, and FBISD.

54.     It is highly predictable and plainly obvious that the failure to adequately screen FBISD teacher applicants, to adequately train FBISD employees as described above, and to adequately supervise, discipline, and/or investigate FBISD teachers accused or suspected of sexually inappropriate behavior with students as described above would cause students, such as D.J., to be deprived of their constitutional right of bodily integrity under the Fourteenth Amendment.

55.     Due to Defendant FBISD's failure to adequately screen FBISD-teacher applicants, particularly Defendant Aguilar, failure to adequately train its employees as

described above, and failure to adequately supervise, investigate, and/or discipline its teachers, particularly Defendant Aguilar, as described above, Defendant FBISD was deliberately indifferent to the risk that students, such as D.J., would be constitutionally deprived of their right of bodily integrity under the Fourteenth Amendment by teachers, such as Defendant Aguilar.

56.     Upon information and belief, Defendant FBISD consciously and deliberately failed to adequately screen FBISD-teacher applicants, particularly Defendant Aguilar, failed to adequately train its employees as described above, and failed to adequately supervise, investigate, and/or discipline its teachers, particularly Defendant Aguilar, as described above, to conserve time, money, and resources and to avoid potential legal liability pursuant to its risk management objectives.

*D.J.'s Injuries*

57.     Due to Defendant FBISD's failure to adequately screen FBISD-teacher applicants, particularly Defendant Aguilar, failure to adequately train its employees as described above, and failure to adequately supervise, investigate, and/or discipline its teachers, particularly Defendant Aguilar, as described above, Defendant Aguilar deprived D.J. of her constitutional right to bodily integrity under the Fourteenth Amendment.

58.     As a result of the sexual abuse she suffered from Defendant Aguilar, D.J. had difficulties concentrating and attending class at Lula Belle to such an extent that she had to be removed from school and had to transition to homeschooling. Consequently, she was deprived access to the educational benefits and opportunities provided by Lula Belle.

59.     As a result of being sexually assaulted by her teacher Defendant Aguirre, D.J. has suffered and continues to suffer damages, including emotional distress.

60.     The assault(s) in her classroom by her teacher at such a young age has led to

D.J.'s pervasive feelings of distrust, anxiety, sadness, and anger.

61.    D.J. suffered damages including pain and suffering, emotional distress, loss of enjoyment of life, medical expense, and future emotional distress and medical expense, as a result of sexual assault by her FBISD teacher, Defendant Aguirre during the 2022-2023 school year.

## COUNT I
### (Plaintiff's Claims Against Defendant Aguilar Under 42 U.S.C. § 1983)

62.    Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

63.    At all times material to this Complaint, D.J. had and continues to have a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

64.    Defendant Aguilar deprived D.J. of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

65.    Defendant Aguilar deprived D.J. of her substantive due process right to bodily integrity under the Fourteenth Amendment by physically, sexually, mentally, and emotionally abusing her during the 2022-2023 school year at Lula Belle, during class hours, and in his classroom.

66.    Defendant Aguilar knew or reasonably should have known that his conduct would lead to deprivation of D.J.'s substantive due process right of bodily integrity under the Fourteenth Amendment.

67.    At all times material hereto, Defendant Aguilar was acting under color of state and/or local law as a licensed Texas teacher that was employed by Defendant FBISD to teach kindergarten students, including D.J.

68.    As a state actor, Defendant Aguilar carried out, in an impermissible manner, the functions assigned to him by Defendant FBISD.

69.     In the course of his official duties, while acting in his official capacity, and/or while exercising his responsibilities pursuant to state law, Defendant Aguilar took advantage of his authority and misused and abused his power to gain access to D.J. and to create opportunities for himself to sexually assault D.J. during the 2022-2023 school year, during class hours, and in his classroom.

70.     It was only possible for Defendant Aguilar to sexually assault D.J. because Defendant Aguilar was clothed with the authority of state law and had power given to him by virtue of state law.

71.     As described throughout this Complaint, Defendant Aguilar engaged in actions and omissions which were egregious, outrageous, or fraught with unreasonable risk. Such actions harmed D.J., who was a member of a particular, limited, closed group, namely, minor, female students at Lula Belle.

72.     Defendant Aguilar was not involved in a situation demanding split-second judgments. Instead, Defendant Aguilar had time for thoughtful deliberation and did plan out his actions accordingly.

73.     Defendant Aguilar's conduct shocks the conscience.

74.     Defendant Aguilar's conduct was a direct and proximate cause of D.J.'s injuries and resultant damages.

75.     Defendant Aguilar's conduct was intentional, reckless, willful, outrageous, and done with callous disregard for D.J.'s constitutional rights. Because Defendant Aguilar's conduct was motivated by malice or evil intent, D.J. is entitled to recover awards of punitive and exemplary damages against Defendant Aguilar in an amount to be determined at trial.

76.     D.J.'s constitutional substantive due process right to bodily integrity under the Fourteenth Amendment was clearly established and any reasonable school administrator,

teacher, or staff member would know that sexual abuse of D.J., as a kindergarten student, on school premises, during the school year, and during class hours, would violate her constitutional right to bodily integrity under the Fourteenth Amendment.

## COUNT II
### (Plaintiff's Claim Against Defendant FBISD Under 42 U.S.C. § 1983)

77.     Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

78.     D.J. has a right to bodily integrity under the Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

79.     Defendant Aguilar deprived D.J. of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution by physically, sexually, mentally, and emotionally abusing her during the 2022-2023 school year, during class hours, and in his classroom.

80.     Defendant Aguilar acted in accordance with FBISD's policy, custom, practice, and usage to (a) failing to fully and/or adequately investigate reports of actual or suspected sexual abuse of students by teachers, particularly Defendant Aguilar; (b) failing to appropriately screen or perform background checks on applicants before licensing and hiring them to be FBISD teachers; (c) failing to train, or failing to adequately train, its employees on receiving, acting upon, or investigating reports of sexually inappropriate behavior or reports of suspicion of sexually inappropriate behavior by teachers; (d) failing to train, or failing to adequately train, its employees on identifying signs of actual or suspected sexually inappropriate behavior by teachers toward students; (e) failing to train, or failing to adequately train, its employees on identifying signs that a student has been, or has potentially been, sexually abused by an adult; (f) failing to supervise its teachers' behavior towards their students; (g) failing to appropriately discipline and/or investigate teachers and/or staff who engage in,

are accused of engaging in, and/or are suspected of engaging in sexually inappropriate behavior with students; and (h) otherwise ignoring student, parent, and teacher's safety concerns when FBISD teachers are alleged or suspected of sexually assaulting students.

81.    These FBISD policies, customs, practices, and usages combined to allow, enable, and support Defendant Aguilar's sexual abuse of D.J. and were the moving force behind Defendant Aguilar depriving D.J. of her substantive due process right of bodily integrity under the Fourteenth Amendment.

82.    FBISD's policies, customs, practices, and usages—as described above—were the direct and proximate cause of D.J.'s injuries and damages.

83.    Sexual abuse of students by teachers is, unfortunately, a proven recurring situation in this country, in Texas, and FBISD.

84.    Prior to Defendant Aguilar sexually abusing D.J., there was a pattern of similar constitutional violations by other FBISD teachers and by Defendant Aguilar himself that put FBISD on actual or constructive notice that its policies, customs, practices, and usages caused and were substantially certain to cause and continue to cause constitutional violations as described in this Complaint.

85.    In addition, it is and was highly predictable and plainly obvious that FBISD's policies, customs, practices, and usages—as described above—would cause students, such as D.J., to be deprived of their constitutional right of bodily integrity under the Fourteenth Amendment.

86.    Despite this, FBISD deliberately and intentionally chose not to implement policies, customs, practices, and usages that would prevent and/or mitigate sexual abuse of female minor students by adult staff.

87.    Instead, FBISD intentionally and deliberately chose to prioritize profits and

its risk management goals over students' safety and constitutional rights by having in place policies, customs, practices, and usages—as described above—that caused D.J. to be deprived of her constitutional right of bodily integrity.

88.     Defendant FBISD was, therefore, deliberately indifferent to the risk that students, such as D.J. would be constitutionally deprived of their right of bodily integrity under the Fourteenth Amendment by teachers, such as Defendant Aguilar.

89.     FBISD's policies, customs, practices, and usages—as described above— deprived D.J. of her constitutional right to be free from bodily integrity under the Fourteenth Amendment.

90.     Because Defendant Aguilar's sexual abuse of D.J. was in accordance with FBISD's policies, customs, practices, and usages, as described in this Complaint, FBISD is liable for the resulting violation of D.J.'s constitutional rights.

91.     As a direct and proximate consequence of the deprivation of her rights, D.J. suffered the resultant injuries and damages described herein.

## COUNT III
**(Plaintiff's Claims Against Defendant FBISD Under Title IX, 20 U.S.C. §§ 1681-1688, for Sexual Abuse)**

92.     Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

93.     At all times material hereto, D.J. was a student at Lula Belle, a school owned, controlled, operated, and administered by Defendant FBISD.

94.     The sexual abuse perpetrated by Defendant Aguilar against D.J. was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

95.     Defendant FBISD had actual or constructive knowledge that Defendant

Aguilar was sexually harassing and abusing students, including D.J.

96.     Defendant FBISD was deliberately indifferent to the inappropriate relationship and illegal conduct that Defendant Aguilar imposed upon D.J.

97.     Defendant FBISD had the authority and power to remedy the hostile environment facing D.J. when she was subjected to Defendant Aguilar's sexual abuse but failed to do so.

98.     Upon information and belief, Defendant FBISD had not provided adequate instruction or education to Lula Belle students, faculty, or staff about sexual abuse, or enforced any policies to prohibit or discourage the sexually abusive hostile environment facing D.J. at the hands of Defendant Aguilar.

99.     Defendant FBISD acted with deliberate indifference and recklessness with respect to the sexually abusive hostile environment facing D.J.

100.     Upon information and belief, and at all times material hereto, Defendant FBISD received federal funding and financial assistance.

101.     Defendant FBISD had a duty under Title IX, 20 U.S.C. § 1681, to provide an educational environment in which no student, including D.J., should be excluded from education, denied the benefits of education, or discriminated against on the basis of sex.

102.     Title IX requires that Defendant FBISD protect its students, including D.J., from sex discrimination and harassment, including sexual violence.

103.     Title IX requires that FBISD have a functional system for reporting, investigation, and resolution of reports that adult employees sexually assault FBISD minor students during the school day.

104.     FBISD's duties under Title IX are not confined to *pro forma* receipt of formal complaint forms to be filed away in a cabinet.

105.    FBISD's duties under Title IX require monitoring and investigation of suspicious behavior by a teacher with a long pattern of isolating young girls alone with an adult male teacher out of view of anyone, such as Defendant Aguilar, as well as investigation after the fact when sexual violence is reported.

106.    At all times material hereto, Defendant FBISD, acting through and as officials, administrators, and employees, maintained customs and policies which permitted or condoned sexual abuse of students by staff and teachers during school hours and school activities.

107.    As a result of these customs and policies, D.J. was subjected to invasive, severe, and objectively offensive sexual, physical, emotional, and mental abuse by Defendant Aguilar during school hours and official school activities. The sexual assault and batteries upon D.J. were the natural and inevitable consequence of effectively unsupervised classroom and on- campus activities.

108.    Upon information and belief, Defendant FBISD failed to properly and adequately instruct administrators, supervisors, employees, and contractors as to how to respond to inappropriate behavior, including sexual abuse, by FBISD employees towards students enrolled in Lula Belle. Defendant FBISD has not developed or promulgated adequate policies addressing issues of sexual abuse by a teacher or staff member against a student or students. The deliberate indifference of Defendant FBISD, and its officials, administrators, and employees, to the acts of sexual abuse, as well as its failure to adopt, publish, and inculcate appropriate policies concerning such abuse and harassment, deprived D.J. of benefits under Title IX, and subjected her to discrimination on the basis of her sex, female, in violation of Title IX. It further caused D.J. to be excluded from participation in, denied the benefits of, and be subjected to discrimination on the basis of sex under an education program or activity

receiving federal financial assistance.

109.    Upon information and belief, prior to the 2022-2023 school year, one or more FBISD employees learned or suspected that Defendant Aguilar had used his status as a teacher in control of young girls to isolate and sexually assault one or more female students. All FBISD employees who learned of such facts had a duty to report to an FBISD administrator who was then under a duty to report to the Title IX office for investigation.

110.    Upon information and belief, prior knowledge or reasonable suspicion by FBISD employees about Defendant Aguilar's sexual violence against his students before the 2022-2023 school year was not investigated by FBISD, including by its Title IX office.

111.    Instead of the federally mandated functional system for reporting, investigation and resolution of reports that adult employees sexually assault minor students during the school day, during the 2022-2023 school year and other years overlapping Defendant Aguilar's employment by FBISD as a teacher, FBISD had a dysfunctional Title IX office and lax procedure for enforcement of Title IX, including inadequate staff training on mandatory reporting, and no workable mechanism for investigation and resolution of reports.

112.    Title IX requires that FBISD investigate any reports of sexual discrimination including sexual violence against students.

113.    Instead of acting in compliance with its Title IX obligations to investigate the reports of sexual violence against D.J., FBISD took limited steps which were calculated to protect FBISD, not D.J. or other students.

114.    Upon receipt of reports of staff misconduct, FBISD's typical practice is to conduct "police investigations" which are not standard law enforcement investigations but are instead risk management tools to limit FBISD's exposure and responsibility. The "police investigations" are not shared with parents of injured students but are instead withheld in

order to hide the facts Title IX requires that FBISD provide information about its investigation of sex discrimination and harassment by staff, including sexual violence, to the parents of students who were or who may have been victims and shield FBISD from liability.[2]

115.    FBISD undertook no remedial steps to prevent such sexual abuse in the future by changing the FBISD school campus conditions and practices which had allowed Defendant Aguilar to assault his students over multiple school years.

116.    As a direct and proximate consequence of FBISD's discrimination and violation of Title IX, D.J. suffered the resultant injuries and damages described herein.

## COUNT IV
### (Plaintiff's Common Law Assault and Battery Claim Against Defendant Aguilar)

117.    Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

118.    Defendant Aguilar's conduct, the sexual abuse described in this Complaint, constituted assault and battery upon D.J.

119.    Defendant Aguilar committed acts that inflicted harm on D.J., specifically the sexual abuse of D.J.

120.    Defendant Aguilar had the duty to refrain from engaging in battery upon D.J.

121.    Defendant Aguilar breached this duty by engaging in the conduct and performing the actions he perpetrated upon D.J., as described in this Complaint.

122.    Defendant Aguilar's conduct was, at a minimum, negligent, willful, malicious, grossly negligent, or indifferent.

123.    As a direct and proximate result of the actions of Defendant Aguilar, D.J. suffered repeated assaults and batteries, which were the cause of the injuries and resultant

---

[2] Grunau and Espinoza, *supra* note 1.

damages described herein.

## COUNT V
### (Plaintiff's Common Law Negligence *Per Se* Claim Against Defendant Aguilar)

124.    Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

125.    There were in force at the time of the events described herein certain statutes which provided that it was a crime of aggravated sexual assault of a child or to engage in indecency with a child, such as, but not limited to, Tex. Pen. Code Ann. §§ 22.021, 21.11.

126.     The conduct of Defendant Aguilar, described herein, violated these statutes. These statutory violations were neither excused nor justified.

127.    D.J. belongs to a class of persons to which these statutes are meant to protect, and the harm or injury is generally of the type of these statutes seeks to prevent.

128.    Defendant Aguilar's conduct constituted negligence *per se*.

129.    As a direct and proximate result of the negligence *per se* of Defendant Aguilar, D.J. suffered the injuries and resultant damages described herein.

## COUNT VI
### (Plaintiff's Common Law Intentional Infliction of Emotional Distress/Outrage Claim Against Defendant Aguilar)

130.    Plaintiff incorporates all of the preceding and succeeding paragraphs as if fully stated herein.

131.    Defendant Aguilar's conduct, described above, was intentional or done in reckless disregard of D.J. and her well-being.

132.    Defendant Aguilar's conduct was extreme and outrageous under the circumstances.

133.    As a result of Defendant Aguilar's conduct, D.J.'s mental and emotional distress was extreme and severe.

134.     As a direct and proximate result of the actions of Defendant Aguilar, D.J. suffered severe emotional distress as well as the injuries and damages described herein.

## PRAYER FOR RELIEF

135.     Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

136.     As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, D.J. was injured and has suffered and continues to suffer damages, including, but not limited to: severe emotional distress, anguish, suffering, humiliation, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other incidental, consequential, and special damages.

137.     As a result of the above-described damages and injuries, D.J. is entitled to recover an award of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

138.     Plaintiff requests damages in an amount sufficient to compensate D.J. for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

139.     Plaintiff requests a trial by jury on all issues so triable.

{Signature Block on Following Page}

FADDUOL, CLUFF, HARDY & CONAWAY, P.C.

*/s/ Meghan L. Mitchell*
Meghan L. Mitchell
1115 Broadway
Lubbock, Texas 79401
Telephone: (806) 763-9377
Facsimile: (806) 763-9378

mmitchell@fchclaw.com

*ATTORNEYS FOR PLAINTIFF*